IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THERESE RIVERA,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　)　Civil Action No. 07-641
　　　　　　　　　　　　　　　　　)
COMMISSIONER OF SOCIAL SECURITY, )
　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　)

O R D E R

AND NOW, this 3rd day of April, 2008, upon consideration of Defendant's Motion for Summary Judgment (document No. 10) filed in the above-captioned matter on December 14, 2007,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (document No. 8) filed in the above-captioned matter on October 31, 2007,

IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

1

I.  **Background**

On August 16, 2004, Plaintiff, Therese Rivera, protectively filed her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. (R. 54-56). Specifically, Plaintiff claimed that she became disabled on September 26, 2002, due to diabetes, high blood pressure, and severe depression. (R. 62).

After being denied initially, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on June 6, 2006. (R. 37-41, 186-205). In a decision dated October 27, 2006, the ALJ denied Plaintiff's request for benefits. (R. 12-20). The Appeals Council declined to review the ALJ's decision on March 13, 2007. (R. 4-6). On May 16, 2007, Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial

2

evidence, shall be conclusive") (quoting 42 U.S.C. § 405(g)); Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (noting that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). However, a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by counterveiling evidence." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). "Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g., that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion." Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy... .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 404.1520(d). If a claimant meets a listing, a finding of disability

is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work. See 20 C.F.R. § 404.1520(e). The claimant bears the burden of demonstrating an inability to return to his or her past relevant work. See Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(g). In making this determination, the ALJ should consider the claimant's RFC, his or her age, education, and past work experience. Id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2007. (R. 12, 14). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that she was disabled on or before that

date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset of disability. (R. 14). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had the severe impairment of major depressive disorder. He found, however, that Plaintiff's non-insulin dependent diabetes, hypertension, and arthritis of the knees did not constitute severe impairments. (R. 14-15).[1] The ALJ concluded that Plaintiff's impairment did not meet any of the listings that would satisfy Step Three. (R. 15).

The ALJ found that Plaintiff retained the RFC to engage in work with no exertional limitations and that she is capable of performing low stress work which is defined to mean simple, routine, repetitive tasks with minimal contact with the public. (R. 15-19). Based on this RFC, Plaintiff established that she is incapable of returning to her past employment; therefore, the ALJ moved on to step five. (R. 19). The ALJ then used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE

---

[1] The Court notes that Plaintiff does not challenge the ALJ's findings regarding these other alleged impairments.

6

testified that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform jobs, including surveillance system monitor, document preparer, and bench assembler, that exist in significant numbers in the national economy on or before December 31, 2007. (R. 20). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 20).

## IV. **Legal Analysis**

Plaintiff raises several arguments as to why the ALJ erred in finding that she was not disabled. While the Court does not reach all of these arguments, it does agree that substantial evidence does not support the ALJ's decision. Specifically, the Court believes that the record is insufficient to support the ALJ's determination of Plaintiff's RFC and his hypothetical question to the VE, particularly in regard to Plaintiff's Global Assessment of Functioning ("GAF") score. Accordingly, the Court will remand the case for further consideration.

Plaintiff argues that although the ALJ gave great weight to the opinion of Dr. Stephen Perconte, Ph.D., a consultative examiner, he failed to include all of the limitations assessed by Dr. Perconte, particularly his assigned GAF score of 45.[2] The

---

[2] Plaintiff also argues that the ALJ failed to include Dr. Perconte's opinion that Plaintiff was markedly limited in her ability to respond appropriately to work pressures in a usual work setting (which Plaintiff erroneously refers to as Dr. Perconte's finding that she had marked limitations in "dealing with basic work stress"). Since the RFC determined by the ALJ limits Plaintiff to low stress work, it is unclear why Plaintiff believes that the ALJ excluded this aspect of Dr. Perconte's opinion.
(continued...)

7

record demonstrates that Dr. Perconte did, indeed, opine that Plaintiff had a current GAF score of 45 in his October 21, 2004 Confidential Clinical Psychology Evaluation for Bureau of Disability Determination. (R. 152). He further opined that Plaintiff's highest GAF score was 55 and her lowest 45. (Id.). The ALJ, in his decision, made no reference to the GAF score assigned by Dr. Perconte, nor did he include it in the RFC, although he relies heavily on the doctor's opinion and afforded it "great weight." (R. 18).

Moreover, The ALJ did not mention Plaintiff's GAF score in his hypothetical question to the VE. (R. 202). Plaintiff's attorney, however, did ask the VE:

> If we were to assume, let's say, in addition to the Judge's first hypothetical, that the [GAF] scores - and, and not a lot of them, but nevertheless scores of 45 or 50, if we were to assume that additional fact, how might that impact the vocational picture?

(R. 203). The VE responded:

> That area is the serious area, and actually in the 40 areas of the reality testing would be impaired. The, the scale, in itself, would you use the characteristic of an inability to keep a job at that, at that area. So, that - at that, there would be no jobs.

---

²(...continued)
However, in any event, since the Court is remanding the case for further consideration anyway, it need not address this issue. On remand, the ALJ should, of course, properly explain the basis for his RFC determination, including his analysis of Plaintiff's work pressure limitations. Likewise, the ALJ should ensure that he has properly assessed Plaintiff's credibility.

8

(Id.). While it is not entirely clear what the VE is saying here, he does appear to be opining that if Plaintiff's RFC also included the limitation that she has a GAF score of 45-50, there would be no available jobs. What is clear is that the ALJ did not discuss the GAF score, or the fact that the VE would have testified that there would be no jobs available for Plaintiff at the current GAF level assessed by Dr. Perconte in 2004. The question, then, is whether substantial evidence supports the ALJ's RFC determination and his hypothetical to the VE.

RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. § 404.1545(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also SSR 96-8p, 1996 WL 374184 (S.S.A.), at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports

9

each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Further, a hypothetical question to a VE must accurately portray the claimant's physical and mental impairments, although it need reflect only those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). "Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002).

Here, the issue involves the ALJ's failure to include Plaintiff's GAF score in Plaintiff's RFC and in the hypothetical to the VE. The difficulty in a case like this is that GAF scores do not directly correlate to a determination of whether an individual is or is not disabled under the Act:

> The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

65 Fed. Reg. 50746, 50764-65. While under certain circumstances a GAF score can be considered evidence of disability, standing alone, a GAF score does not evidence an impairment seriously interfering with a claimant's ability to work. See Lopez v. Barnhart, 78 Fed.

10

Appx. 675, 678 (10th Cir. 2003). GAF scores may indicate problems that do not necessarily relate to the ability to hold a job. See id.; Zachary v. Barnhart, 94 Fed. Appx. 817, 819 (10th Cir. 2004); Wilkins v. Barnhart, 69 Fed. Appx. 775, 780 (7th Cir. 2003); Howard v. Commissioner of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).

However, although there is no direct correlation to a finding of disability, a GAF score does still constitute evidence to be considered by the ALJ. The ALJ in this case failed to address the issue, even though the VE apparently considered it to be an important consideration. The ALJ did, of course, thoroughly discuss Dr. Perconte's report and may have felt that the limitations he adopted from the report encompassed whatever limitations a GAF of 45 would entail. It may well be that, had there been no testimony from the VE regarding GAF scores, discussion of Plaintiff's GAF score may not have been warranted. However, since the VE opined that a claimant with the RFC as determined by the ALJ, based at least in large part on Dr. Perconte's opinion, could work, but that one with a GAF score of 45 could not, further discussion of this issue is warranted.

A very similar situation was addressed by the Tenth Circuit in Givens v. Astrue, 251 Fed. Appx. 561 (10th Cir. 2007). There, as here, the claimant's GAF score was not included by the ALJ in the RFC determination, but the claimant's attorney asked the VE, at the hearing, whether a person with that GAF score (in that case

50) would be able to maintain employment. There, as here, the VE testified that, generally, such a person could not do so. The ALJ, as in this case, did not address the matter. In reversing the district court's affirmance of the Commissioner's decision denying the claimant benefits, the Tenth Circuit stated:

> In particular, Ms. Givens' treating physician assigned her a GAF score of 50. The ALJ gave no reason for rejecting this assessment. The VE stated at the hearing that a person with a GAF score of 50 would have difficulty maintaining employment. Nowhere in his decision did the ALJ consider the effect of this difficulty on Ms. Givens' ability to work. Nor did he analyze the GAF score as the opinion of a treating physician as required by the regulations and our case law.

Id. at 567 (citations and footnote omitted). This Court agrees with this reasoning.

The record leaves open the possibility of several assumptions about Plaintiff's GAF score. It could be inferred, as discussed above, that the ALJ believed that the limitations contained in the RFC and hypothetical that were derived from the specific limitations found by Dr. Perconte adequately encompassed the more amorphous GAF score. It could be that the ALJ disregarded the VE's testimony about the impact of a GAF score in the 40-50 range, since, as discussed, there is no direct correlation between GAF scores and disability. It could be that the ALJ found that Plaintiff did not have a GAF of 45 for twelve continuous months. It could be that he rejected Dr. Perconte's GAF assessment altogether.

12

This ambiguity renders the Court unable to adequately assess the basis for the ALJ's RFC finding and his hypothetical to the VE. Further discussion is needed to understand how the ALJ factored Plaintiff's GAF score into his findings.

The Court acknowledges that GAF scores, which can mean many things, create something of a grey area in terms of disability determination. Further, the Court expresses no opinion as to whether the ALJ's RFC determination and hypothetical *could* be supported by the record. It is the need for further explanation that mandates the remand in this case.

V.      **Conclusion**

In short, the record simply does not permit the Court to determine whether the ALJ's determination of Plaintiff's RFC and his hypothetical question to the VE are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf:    Counsel of record